# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| DAVID MURPHY and<br>JOHN GUTERMUTH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  1:03-CV-334-TS |
| | ) | |
| LARRY GILBERT, in his official capacity | ) | |
| as Steuben County Surveyor, and | ) | |
| THE STEUBEN COUNTY DRAINAGE | ) | |
| BOARD, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On July 30, 2003, the Plaintiffs, David Murphy and John Gutermuth, filed a lawsuit in Steuben Superior Court against Larry Gilbert, in his official capacity as Steuben County Surveyor, the Steuben County Drainage Board, Vance Wilson, and Wilson Land Clearing and Ditching for cutting down some trees on their properties, along a drain maintained by Steuben County. The Plaintiffs alleged that the Defendants violated the Fifth Amendment's takings clause as well as Indiana's Constitution, and committed trespass on their lands. They also brought a claim under Indiana's inverse condemnation statute. On September 13, 2004, the Court dismissed the latter claim and, on October 20, 2004, in accordance with the stipulation of the parties, the Court dismissed Vance Wilson and Wilson Land Clearing and Ditching.

On March 31, 2005, the remaining Defendants, Gilbert and the Steuben County Drainage Board, moved for summary judgment. On April 29, the Plaintiffs responded, opposing the motion, and on May 16, 2005, the Defendant's filed a Reply. The Court will now address this motion.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the

moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter*

*Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## B.  Material Facts

A Steuben County drain called Ryan Reppard Drain runs through the lands of both Plaintiffs. From time to time, the ditch is dredged at various locations to maintain a consistent water flow. If trees or other vegetation obstruct heavy equipment access to the drain, they are generally removed. For maintenance of the drains, Indiana law allows a right-of-way within seventy-five feet of any regulated drain.

Murphy purchased 120 acres abutting the drain in 1992 at $575 per acre. He used this land for hunting and camping. In May 2002, Murphy's neighbor told him that Vance Wilson cut down some trees along the drain on Murphy's property, in order to dredge it. Murphy then called Steuben County Surveyor, Larry Gilbert, to ask why the trees were cut. Gilbert told him that he hired Wilson to dredge the drain, but was not aware that any trees had been cut. He also said that Bruce Moody, a local farmer, had told Vance Wilson to remove the trees; however, sometime later, Gilbert went out to the site and told Wilson not to cut any trees. Gilbert promised Murphy to find out what was happening. That same day, he called Murphy back and apologized for "drop[ping] the ball." (Murphy Dep. at 18.) He said that the drain had always been cleaned from the north side and that there was no reason for the trees to come down. Later, Murphy learned that, after Gilbert told Wilson not to cut the trees, Moody spoke to Wilson again telling him to continue taking the trees

down and "that he would take care of Larry Gilbert."[1] (Murphy Dep. at 17.) Sometime later, Murphy called Wilson to ask who gave the permission to clear the trees, and Wilson answered that he had that authority from the county. Although Murphy lost $10,000 in value of the property as a result of the clearing, he was not deprived of any use of the property. On March 1, 2004, Murphy's land was appraised at $120,000.

Gutermuth bought the land at issue around 1999 at $1,140 or $1,160 per acre. Moody farmed the property for him through 2002. In May 2002, Gutermuth was driving close to where the drain crossed his property when he saw the area along the drain stripped clean and four piles of trees bulldozed on his property. He also saw Wilson's equipment parked nearby. (Gutermuth Dep. at 28.) He called Gilbert to find out what was happening. Gilbert said that he was aware of the clearing and that he talked to Moody, who told him that the trees needed to come down. Just as with Murphy, Gilbert apologized to Gutermuth for dropping the ball because he should have contacted him and not relied on Moody alone. (Gutermuth Dep. at 28.) After the clearing, Gutermuth's pond, once hidden by the trees, became exposed to the road, and the land's value decreased by $52,000. On March 1, 2004, Gutermuth's land was appraised at $221,000.

In both cases, the removed trees were within seventy-five feet of the drain. When Gilbert contracted with Wilson to dredge the drain, he did not specify how the work should be done. Wilson had been dredging drains for many years and knew how to get the work done. (Wilson Dep. at 13.) Moody did not file with the County a petition for dredging, and no notice was given to either Plaintiff that the drain running through their properties would be dredged.

---

[1]It seems that Moody was not telling Wilson to cut the trees for sake of cutting them but because he wanted Wilson to be able to dredge the drain to allow for adequate draining of the farmlands.

**C. The Plaintiffs' Fifth Amendment Claim**

The Plaintiffs sued Steuben County[2] under 42 U.S.C. § 1983, claiming that, by clearing trees along parts of the drain on their lands, it committed a taking under the Fifth Amendment because the clearing was not necessary and the Plaintiffs were not given notice. Steuben County responds that it did not commit a taking because it exercised its police powers under Indiana drainage statutes.

Section 1983 is not a source of substantive rights. Rather, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)).

A county may not be liable under § 1983 solely because it employs a tortfeasor. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). Rather, the burden is on a plaintiff to show that the county's official policy or custom caused injury to him. *Id.* at 694.

> Unconstitutional policies or customs can take three forms:
> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

---

[2]Since the Plaintiffs are suing the Steuben County Drainage Board and Gilbert in his official capacity, they are really suing the County. *See Scott v. O'Grady*, 975 F.2d 366, 372 (7th Cir. 1992) ("[A] suit against a government official in his official capacity is a suit against the governmental entity for which he is an agent, not the official himself."); *cf. Kolar v. Sangamon County*, 756 F.2d 564, 568–569 (7th Cir. 1985) ("If a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities he should expressly state so in the complaint.") (citations omitted).

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003).

When the illegal practice is widespread, a policy maker's actual or constructive knowledge or acquiescence in the unconstitutional activity makes the city liable. *See, e.g., McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993). "The longstanding or widespread nature of a particular practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *Id.*

Liability against the county may also be based upon a single incident, if the incident is caused by a final policymaker. *See Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir.1994) ("It is true that a single act or decision of a final policymaker can establish municipal policy."). "In order to have final policymaking authority, an official must possess [r]esponsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government. The mere authority to implement pre-existing rules is not the authority to set policy. A person's status as a final policymaker under § 1983 is a question of state or local law." *Killinger v. Johnson*, 389 F.3d 765, 771–72 (7th Cir. 2004) (quotation marks and citations omitted); *see also Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995) ("'[R]esponsibility for making law or setting policy' . . . is authority to adopt rules for the conduct of government. Authority to make a final decision need not imply authority to establish rules."). "As a corollary of this point, the plaintiff must first allege that a defendant is a final policymaker. Only then can a court proceed to the next question of whether the single act or single decision of that defendant constituted municipal policy." *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir. 2004) (citations omitted).

"A [governmental entity] may also be liable for the actions of an employee who lacks final policymaking authority if that employee's actions were ratified by the [entity]. [A] plaintiff seeking

to establish a § 1983 claim against a municipality based on a ratification theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Killinger*, 389 F.3d at 772.

It is evident that the clearing on both properties was done under the color of law. However, no certainty exists as to whether the cutting can be imputed to Steuben County. The Plaintiffs have not alleged that Steuben County's official policy or custom caused injuries to them. They have not even attempted to show that the County had an express policy or widespread practice of the alleged constitutional deprivations. Nor have they identified either Wilson or Gilbert as persons with final policy making authority regarding how drains should be accessed when they are overgrown with trees. This presents a glaring void in the Plaintiffs' case. *See Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004) ("Plaintiff's municipal liability theory fails because he has not identified any state or local positive law, or custom having the force of law, that grants either the chief or the mayor authority to adopt rules that are relevant to this case."); *McGreal*, 368 F.3d at 685 ("[T]he plaintiff must first allege that a defendant is a final policymaker. Only then can a court proceed to the next question of whether the single act or single decision of that defendant constituted municipal policy.") (citations omitted); *see also Celotex Corp.*, 477 U.S. at 322 (Rule 56(c) requires the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Celotex Corp.*, 477 U.S. at 325 (when the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim).

Nevertheless, the Court acknowledges that Gilbert most likely had final policy-making

authority regarding the drain dredging. *See* I.C. 25-21.5-9-6 ("A land surveyor: (1) is personally responsible for designing and directing the training, procedures, and daily activities of an employee participating in any part of the land survey."). The same cannot be said of Wilson, however. Wilson was only a contractor for Gilbert, without any authority to set the County's policies. Yet, it was Wilson who initiated clearing of the trees along Murphy's property. In fact, he did so contrary to Gilbert's prohibition. Gilbert did not find out that the trees were cut until Murphy called him. Sometime later, Murphy learned that Wilson disregarded Gilbert at the urging of Moody, a local farmer, who did not even work for the County. Therefore, the County is not responsible for Wilson's actions on Murphy's land. Wilson was not a final policy-maker nor were his actions ratified by a County official with final policy-making authority, such as Gilbert, so as to implicate the County.

The same may be true regarding Wilson's work on Gutermuth's land, but the parties have not sufficiently developed the record for the Court to discern who the main actors were, how much Gilbert knew before or at the time of the clearing, and whether he ratified Wilson's choice to clear the trees.

But the Court need not decide these issues because the Plaintiffs have not sufficiently demonstrated a Fifth Amendment violation. The Plaintiffs concede that the county has a right-of-way within the area of the removed trees. They argue, however, that since the dredging on the drain had previously been done from the side opposite of their properties, clearing of their trees was unnecessary and was contrary to Indiana Code 36-9-27-33(d).[3] In addition, the Plaintiffs maintain that they should have been given notice of the impending clearing.

While the Court is sympathetic to the Plaintiffs' losses, it is mindful that not every violation

---

[3]This sections states that trees and shrubs within the right-of-way "may be removed by the surveyor if necessary to the proper operation or maintenance of the drain."

of state laws becomes a violation of the Federal Constitution. *See Garcia v. Kankakee County Housing Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) ("[A] unit of state or local government does not violate the federal Constitution just because it violates a state or local law."). If the Plaintiffs are entitled to a remedy, it is not under the takings clause. They have not show any cases in this circuit or elsewhere holding a county liable under the Fifth Amendment simply because it has not complied with state law procedures while exercising its police powers.

The Fifth Amendment to the United States Constitution provides that "no private property shall be taken for public use, without just compensation." This limitation on governmental powers has been imposed on the states through the Fourteenth Amendment. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163 (1998). Yet, "not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense." *Armstrong v. United States*, 364 U.S. 40, 48 (1960). If the government's action is "a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962).

Indiana has long recognized that government's actions under the drain statute are a valid exercise of its police powers. *See Mattingly v. Warrick County Drainage Bd.*, 743 N.E.2d 1245 (Ind. Ct. App. 2001). Although each Plaintiffs' land diminished in value as a result of the County's exercise of its police powers, their lands have not been rendered useless.[4] By removing the trees during the dredging of the drain, the County removed a privacy shield that the Plaintiffs enjoyed, but it did not permanently occupy the lands or put in structures that would deprive the Plaintiffs ownership even of part of their properties.

---

[4]Murphy himself acknowledged that much in his deposition.

While the Plaintiffs argue that the government may commit taking of private property through its exercise of police powers, they have not shown any authority that the County's activity within the drain's seventy-five foot right-of-way amounted to an unconstitutional taking, as opposed to a state law violation. As far as the takings clause is concerned, the Plaintiffs' lands along the drain had been subject to the County's control from the beginning, and clearing of trees to access the drain, no matter from which side, was incidental to that control. Dredging the drain was a valid exercise of police powers under the Federal Constitution. The County's fault, if any, was that it violated a state statute and that it did not give notice to the Plaintiffs about its impending actions. But these are procedural due process, not takings, issues which are not before the Court to consider. *Cf. Pro-Eco, Inc. v. Bd. of Com'rs of Jay County*, 57 F.3d 505, 513 (7th Cir. 1995) ("[P]roperty as contemplated by the Takings Clause and property as contemplated by the Due Process Clause cannot be coterminous. . . . The Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause.").

Because the Court finds that the County has not violated the takings clause of the Federal Constitution, it will remand the remaining state claims to state court. This case was removed to this Court on the basis of a § 1983 claim. Along with the § 1983 claim, the Court accepted jurisdiction over the pendent state claims. However, where the federal claim is not viable, the Court must not decide state matters unless there is a compelling reason to do so. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998). Among such reasons are "running of the state law cause of action's statute of limitations and cases where 'sending the case to another court will cause a substantial duplication of effort.'" *Williams v. Seniff*, 342 F.3d 774, 794 (7th Cir. 2003) (citing *Moses v. County of Kenosha*, 826 F.2d 708, 710–11 (7th Cir.1987)). In this case, no such concerns exist: discovery

has been completed and state claim arguments have been developed to such an extent that the parties will not have to duplicate their work. *Cf. id.* Accordingly, there are no countervailing reasons for the Court to retain the Plaintiffs' state claims.

## CONCLUSION

For these reasons, the Court GRANTS summary judgment for the Defendants, Larry Gilbert and the Steuben County Drainage Board, as to the Plaintiffs' 42 U.S.C. § 1983 claim [DE 24]. In addition, the Court REMANDS the remaining claims to state court.

SO ORDERED on June 30, 2005.


    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT